United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AURELIA BARCH,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CONTRA COSTA COUNTY HEALTH SERVICES DEPARTMENT, *et al.*,<br><br>　　　　　Defendants.<br>_____/ | No. C-05-2461 EMC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>**(Docket No. 39)** |

　　　　Plaintiff Aurelia Barch has sued Defendants Contra Costa County and Jana Drazich for retaliation pursuant to Title VII. *See* 42 U.S.C. § 2000e-3(a). The substance of Ms. Barch's complaint is that she was denied a promotion because she had made complaints about a hostile work environment. *See* Compl. ¶ 15. Currently pending is Defendants' motion for summary judgment. Having considered the parties' briefs and accompanying submissions, as well as oral argument of counsel, the Court hereby **GRANTS** in part and **DENIES** in part the motion.

## I.　FACTUAL & PROCEDURAL BACKGROUND

　　　　The parties do not dispute the following facts unless otherwise noted.

　　　　During the relevant period, Ms. Barch worked in the County Health Services Department. Her immediate supervisor was Ms. Drazich, whose title is Accounting Manager in the County Health Services Department. *See* Drazich Decl. ¶ 2. Ms. Drazich's supervisor was George Washnak, whose title is Health Services Controller for the County Health Services Department. *See* Washnak Decl. ¶ 2.

Ms. Barch was employed by the County as an Accountant I. On or about October 9, 2002, Ms. Drazich recommended that Ms. Barch be upgraded to an Accountant II. *See* Holmes Decl., Ex. F (Barch Depo. at 128-29); Drazich Decl. ¶ 3. Ms. Barch was upgraded to an Accountant II effective November 1, 2002. *See* Holmes Decl., Ex. F (Barch Depo. at 129); Drazich Decl. ¶ 3. She was then placed on "probation" as an Accountant II. Probation is a six-month period for an upgraded employee to ensure that the employee develops the skills and abilities required for the upgraded position. *See id.* ¶ 2; *see also* Holmes Decl., Ex. B. In April 2003, Ms. Drazich accepted Ms. Barch as an Accountant II. *See* Holmes Decl., Ex. F (Barch Depo. at 132); Drazich Decl. ¶ 3.

Subsequently, on or about October 28, 2003, Ms. Drazich recommended that Ms. Barch be upgraded to Accountant III. *See* Holmes Decl., Ex. F (Barch Depo. at 133); Drazich Decl. ¶ 5. On or about December 1, 2003, Ms. Barch began her probation as an Accountant III. *See* Holmes Decl., Ex. F (Barch Depo. at 133); Drazich Decl. ¶ 3. On or about April 23, 2004, Ms. Drazich received a Probationary and Salary Report for Ms. Barch from the personnel office. Ms. Drazich initially checked the boxes to pass Ms. Barch on probation. *See id.* ¶ 9. However, Ms. Drazich ultimately made the decision to reject Ms. Barch on probation as an Accountant III. *See id.* ¶ 11. Ms. Drazich informed Ms. Barch of this decision on or about May 13, 2004. *See id.* ¶ 12.

As noted above, Ms. Barch claims that she was denied the promotion to Accountant III in retaliation for making complaints about a hostile work environment. It is undisputed that Ms. Barch made at least two complaints to Ms. Drazich about a hostile work environment. Both incidents involved a co-worker, Robert Hansen. *See* Pl.'s Opp'n, Ex. C (Tr. at 39)[1]; Drazich Decl. ¶ 4. According to Ms. Barch, she started to make complaints to Ms. Drazich about Mr. Hansen in March or April of 2003. *See* Barch Decl. ¶ 5; Pl.'s Opp'n, Ex. D (Barch Depo. at 64).[2] Although disputed by Defendants, Ms. Barch contends she complained numerous times thereafter to Ms. Drazich. (See

---

[1] Defendants have objected to Exhibit C on the basis that the document is not authenticated and is hearsay. The objections are overruled. Ms. Barch subsequently authenticated the document. Moreover, Defendants do not seriously dispute its authenticity.

[2] Defendants have objected to Exhibit D on the basis that the document is not authenticated and is hearsay. The objections are overruled. Ms. Barch subsequently authenticated the document. Moreover, Defendants do not seriously dispute its authenticity.

1  below).  Importantly, Ms. Barch states that the last time she complained about Mr. Hansen was on or
2  about April 28, 2004, at which time she told Ms. Drazich that she did not feel safe being alone
3  around Mr. Hansen in the office.  *See* Pl.'s Opp'n, Ex. C (Tr. at 12); Barch Decl. ¶ 8.  According to
4  Ms. Barch, Ms. Drazich appeared annoyed and then became angry and started to shout at her.  *See*
5  *id.*  Approximately two weeks later, Ms. Drazich informed Ms. Barch of her decision to reject Ms.
6  Barch on probation as an Accountant III.

## II.   DISCUSSION

A.   Legal Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  An issue of fact is genuine only if there is sufficient evidence for a reasonable jury to find for the nonmoving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).  At the summary judgment stage, evidence must be viewed in the light most favorable to the nonmoving party and all justifiable inferences are to be drawn in the nonmovant's favor.  *See id.* at 255.

At the hearing on the motion for summary judgment, Defendants suggested that a court may engage in some weighing of the evidence at the summary judgment stage.  That contention, however, is not supported by case law.  The Supreme Court has stated that the standard for summary judgment mirrors the standard for judgment as a matter of law under Federal Rule of Civil Procedure 50.  *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).  In *Reeves*, the Supreme Court stated that, for a Rule 50 motion, a court should review the record as a whole but "disregard all evidence favorable to the moving party that the jury is not required to believe."  *Id.*  "[A] court must draw all reasonable inferences in favor of the nonmoving party, and *it may not make credibility determinations or weigh the evidence*."  *Id.* (emphasis added).  The Ninth Circuit is in accord, both with respect to Rule 50 motions and motions for summary judgment.  *See Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002) (noting that, for a Rule 50 motion, "the court should review the record as a whole, [but] it must disregard evidence favorable to the moving party that the

3

jury is not required to believe, and may not substitute its view of the evidence for that of the jury"); *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1027 (9th Cir. 2006) (stating that, for summary judgment, a court does "not weigh the evidence or determine whether [the plaintiff's] allegations are true; [it merely] determine[s] whether there is a genuine issue of fact for trial"). Accordingly, in the instant case, "[i]f a reasonable jury viewing the summary judgment record could find by a preponderance of the evidence that [Ms. Barch] is entitled to a verdict in [her] favor, then summary judgment [is] inappropriate" and must be denied. *Id.*

B.   Preclusion

The parties do not dispute that Ms. Barch appealed the denial of her probation to Contra Costa County's Merit Board and that the Merit Board denied her appeal. *See* Holmes Decl., Ex. D (letter, dated 1/13/05, from County to Ms. Barch) (informing Ms. Barch that Merit Board adopted the hearing officer's report and recommendation and denied her appeal). Defendants argue, however, that Ms. Barch is precluded from bringing this lawsuit or at the very least findings of fact are binding herein because she failed to appeal the decision of the Merit Board. *See* Mot. at 7 (asserting that "[s]tate administrative adjudications of legal as well as factual issues, even if unreviewed, are given preclusive effect where fairness requirements are met").

Defendants are incorrect. As Ms. Barch points out, in *University of Tennessee v. Elliott*, 478 U.S. 788 (1986), the Supreme Court held that "Congress did not intend unreviewed state administrative proceedings to have preclusive effect on Title VII claims." *Id.* at 796; *see also McInnes v. California*, 943 F.2d 1088, 1093-94 (9th Cir. 1991) ("The clear teaching of *Elliott* is that in a Title VII action a prior state decision enjoys issue preclusive effect only if rendered or reviewed by a court. . . . In contrast, unreviewed administrative determinations lack preclusive effect in a subsequent Title VII action, regardless of any preclusive effect state law might accord to them."). Although administrative preclusion may apply to suits under § 1983, *see Miller v. County of Santa Cruz*, 39 F.3d 1030, 1032-33 (9th Cir. 1994), *University of Tennessee* clearly held it does not apply to Title VII. Nor does *University of Tennessee* draw a distinction between claim preclusion and preclusion as to factual findings. The central point is that courts have *de novo*

jurisdiction over Title VII claims. Accordingly, the Merit Board's decision has no preclusive effect in the instant case.

C.  Hostile Work Environment

Ms. Barch concedes that any claim for hostile work environment, whether against Ms. Drazich or the County, may be dismissed. According to Ms. Barch, she is proceeding with a claim of retaliation only. The Court therefore **GRANTS** summary judgment to Defendants with respect to a claim for hostile work environment.

D.  Retaliation

Under Title VII, "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this title [42 U.S.C. §§ 2000e to 2000e-17], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title." 42 U.S.C. § 2000e-3(a). Title VII prohibits, *inter alia*, discrimination on the basis of sex. *See id.* § 2000e-2(a)(1) (providing that "[i]t shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin").

1.  Retaliation Claim Against Ms. Drazich

Defendants argue that, at the very least, Ms. Barch has no retaliation claim against Ms. Drazich because "individual defendants cannot be held liable for damages under Title VII." *Miller v. Maxwell's Int'l*, 991 F.2d 583, 587-88 (9th Cir. 1993) (adding that this holding does not encourage supervisory personnel to violate Title VII with impunity because "[n]o employer will allow supervisory or other personnel to violate Title VII when the employer is liable for the Title VII violation"); *see also Lappin v. Laidlaw Transit*, 179 F. Supp. 2d 1111, 1118 n.2 (N.D. Cal. 2001) (Illston, J.) (citing *Miller* for the proposition that "[i]ndividual employees may not be held personally liable under Title VII"). *Cf. Walsh v. Nevada Dept. of Human Resources*, --- F.3d ---,

2006 DJDAR 16345 (9th Cir. Dec. 18, 2006) (individual defendant cannot be held liable for violations of ADA).

Ms. Barch argues that this Court should not follow *Miller* because other courts have disagreed with its holding. *See* Opp'n at 15. Ms. Barch highlights in particular an opinion from the Eastern District of California, which she claims "place[s] [*Miller*] in question." *Id.* (citing *Ostrach v. Regents of Univ. of Cal.*, 957 F. Supp. 196 (E.D. Cal. 1997)).

The Court is not persuaded by Ms. Barch's reliance on *Ostrach*. First, even though the court in *Ostrach* provided a strong criticism of *Miller*, and even went so far to say that *Miller* was "wrongly decided," the court nonetheless acknowledged that it was bound by the opinion and therefore concluded that the individual defendants sued by the plaintiff could not be held liable for discrimination pursuant to the Americans with Disabilities Act ("ADA"). *Id.* at 200. The court explained: "[C]onstrained by the [Ninth] Circuit's holding in *Miller* [which addressed individual liability under Title VII] and the fact that § 12112(a) [of the ADA] tracks the language of 42 U.S.C. § 2000(e) [of Title VII], the court will not grant plaintiff leave to sue the individual defendants for their alleged violation of his rights under 42 U.S.C. § 12112(a)." *Id.*

Second, although the court in *Ostrach* did find that individual defendants can be held liable for retaliation (as opposed to discrimination) under the ADA, *see* 42 U.S.C. § 12203, other courts have held otherwise. *See, e.g.*, *Cai v. Chiron Corp.*, No. C 04-1587 CRB, 2004 U.S. Dist. LEXIS 16833, at *12 (N.D. Cal. Aug. 17, 2004) (noting that *Ostrach* has been rejected by several courts and concluding that "an individual cannot be liable under the ADA, including an ADA retaliation claim"); *Stern v. California State Archives*, 982 F. Supp. 690, 693 (E.D. Cal. 1997) (disagreeing with *Ostrach* and concluding that "an individual cannot be held liable for retaliation in the workplace under the ADA except as provided under Title VII").

Moreover, the *Ostrach* court concluded that individual defendants can be held liable for retaliation under the ADA only because

> the retaliation provision directs that "no *person* shall discriminate against any individual . . . ." Since the plain meaning of "person" includes individuals, and since I "must presume that a legislature says in a statute what it means and means in a statute what it says there," it

> follows that plaintiff may sue the individual defendants under the anti-retaliation provision of the ADA.

*Ostrach*, 957 F. Supp. at 200 (emphasis in original). Unlike the retaliation provision of the ADA, the retaliation provision of Title VII states that "[i]t shall be an unlawful employment practice for an *employer* to [retaliate]," 42 U.S.C. § 2000e-3(a) (emphasis added), not for a *person* to retaliate. Hence, the rationale of *Ostrach* has no application to the case at bar.

Accordingly, in the instant case, Ms. Barch's Title VII retaliation claim against Ms. Drazich is barred by *Miller*. The Court therefore **GRANTS** summary judgment with respect to the retaliation claim against Ms. Drazich as an individual.

2.      Retaliation Claim Against County

The only question remaining is whether summary judgment is warranted with respect to the retaliation claim against the County. Under Ninth Circuit law, a plaintiff can establish a *prima facie* case of retaliation under Title VII by demonstrating that "she engaged in an activity protected under Title VII; (2) her employer subjected her to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action." *Thomas v. City of Beaverton*, 379 F.3d 802, 811 (9th Cir. 2004). If the plaintiff can establish a *prima facie* case, then "'the burden . . . shifts to the defendant to articulate a legitimate nondiscriminatory reason for its employment decision.'" *Lam v. University of Hawaii*, 40 F.3d 1551, 1559 & n.11 (9th Cir. 1994). If the defendant does so, then, "'in order to prevail, the plaintiff must demonstrate that the employer's alleged reason for the adverse employment decision is a pretext for another motive which is discriminatory.'" *Id.*

For purposes of summary judgment, if a plaintiff offers evidence to provide a *prima facie* case and proffers sufficient facts so that a reasonable trier of fact could find the employer's explanation pretextual, then summary judgment should not be granted to the employer. *See Strother v. Southern Cal. Permanente Medical Group*, 79 F.3d 859, 868 (9th Cir. 1996) (discussing retaliation claim pursuant to FEHA); *see also Coons v. Sec'y of the United States Dep't of the Treasury*, 383 F.3d 879, 887 (9th Cir. 2004) (discussing retaliation claim pursuant to the Rehabilitation Act; noting that, if the "plaintiff demonstrates a genuine issue of material fact as to

7

whether the reason advanced by the employer was a pretext, then the retaliation case proceeds beyond the summary judgment stage").

It should be noted that a plaintiff is not required to use the above burden-shifting framework to defeat a summary judgment motion. "[W]hen responding to a summary judgment motion, the plaintiff is presented with a choice regarding how to establish his or her case. [The plaintiff] may proceed by using the *McDonnell Douglas* framework, or alternatively, may simply produce direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated [the defendant]." *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1122 (9th Cir. 2004). Given the focus of the briefs, the Court examines the issue primarily through the lens of the burden-shifting framework.

   a. <u>Causal Link Between Protected Activity and Adverse Employment Action</u>

In the instant case, the County has moved for summary judgment on the basis that Ms. Barch cannot establish a *prima facie* case for retaliation. More specifically, the County argues that Ms. Barch cannot demonstrate that a causal link exists between the protected activity (*i.e.*, complaining about sex discrimination) and the adverse employment action (*i.e.*, denial of promotion to Accountant III).

The County's argument is not persuasive. "The requisite degree of proof necessary to establish a prima facie case for Title VII . . . on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence." *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220 (9th Cir. 1998) (internal quotation marks omitted). In the instant case, contrary to what the County argues, there is circumstantial evidence of causation, namely, the proximity in time between the protected action and the allegedly retaliatory employment decision. *See Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987) ("Causation sufficient to establish the third element of the prima facie case may be inferred from circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision.").

Ms. Barch claims that she made complaints about Mr. Hansen various times to Ms. Drazich starting in March or April 2003. *See* Barch Decl. ¶ 5 ("I began to complain to my superior, Jana

Drazich, about Mr. Hansen's harassment in March or April of 2003."); *see also* Pl.'s Opp'n, Ex. D (Barch Depo. at 64) (identifying April 2003 as the relevant time period). According to Ms. Barch, she ultimately spoke to Ms. Drazich about Mr. Hansen's harassment five or six times, the last time being on April 28, 2004. *See* Barch Decl. ¶¶ 5, 8; Pl.'s Opp'n, Ex. C (Tr. at 12). Ms. Barch claims that, on that day, when she told Ms. Drazich about not feeling safe being alone around Mr. Hansen, Ms. Drazich gave the appearance of being annoyed and then became angry and started to shout at her. *See* Barch Decl. ¶ 8. Approximately two weeks later, Ms. Drazich met with Ms. Barch to inform her that she was being rejected on probation. *See* Drazich Decl. ¶ 12. Given that the adverse employment action followed shortly after Ms. Barch's final complaint about Mr. Hansen, there is sufficient evidence from which a causal link could be inferred.

In their reply brief, Defendants assert that Mr. Barch never claimed that she made a complaint to Ms. Drazich on April 28, 2004, until her declaration in opposition to their motion for summary judgment. *See* Reply at 6. In other words, Defendants suggest that Ms. Barch's declaration is something akin to a sham declaration. *See Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991) ("[A] party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony."). The facts do not support Defendants' claim. At the administrative hearing which took place in November 2004, Ms. Barch testified that "sometime in April of 2004 I talked to [Ms. Drazich], and I told her that I don't feel safe being alone around [Mr. Hansen] in our office." Pl.'s Ex. C (Tr. at 12). This is consistent with Ms. Barch's statement in her declaration that she complained to Ms. Drazich about Mr. Hansen on April 28, 2004. Thus, the Court finds that, as discussed above, there is sufficient evidence to establish a *prima facie* case for retaliation.

        b.    <u>Pretext</u>

According to the County, even if Ms. Barch could establish a *prima facie* case for retaliation, she still cannot rebut the County's legitimate, nondiscriminatory reasons for denying her the promotion to Accountant III.

The Ninth Circuit has emphasized that

> very little [] evidence is necessary to raise a genuine issue of fact regarding an employer's motive; any indication of discriminatory motive . . . may suffice to raise a question that can only be resolved by

9

> a fact finder. When [the] evidence, direct or circumstantial, consists of more than the *McDonnell Douglas* presumption, a factual question will almost always exist with respect to any claim of a nondiscriminatory reason.

*McGinest*, 360 F.3d at 1124 (internal quotation marks omitted).

In spite of the above, the County contends that, if a plaintiff relies on circumstantial evidence (as opposed to direct evidence), then the evidence of pretext must be specific and substantial. The County's position finds support in *Godwin*, in which the Ninth Circuit stated that, "[i]n those cases where direct evidence is unavailable, . . . the plaintiff may come forward with circumstantial evidence that tends to show that the employer's proffered motives were not the actual motives because they are inconsistent or otherwise not believable. Such evidence of 'pretense' must be 'specific' and 'substantial' in order to create a triable issue with respect to whether the employer intended to discriminate on [an impermissible] basis." *Godwin*, 150 F.3d at 1222.

While *Godwin* and other Ninth Circuit cases relying on *Godwin* have made this distinction between direct and circumstantial evidence of motive, more recent Ninth Circuit cases have rejected the distinction. Most notably, in *Cornwell*, the Ninth Circuit noted that, in a 2003 opinion issued after *Godwin*, the Supreme Court underscored that circumstantial evidence should be treated no different from direct evidence -- in fact, that circumstantial evidence could actually be more certain, satisfying, and persuasive than direct evidence. *See Cornwell*, 439 F.3d at 1030 (discussing *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003)). Thus, the Ninth Circuit concluded that, in the context of summary judgment, a Title VII plaintiff relying on circumstantial evidence did not have "to produce more, or better, evidence than a plaintiff who relies on direct evidence." *Id.* "In light of *Cornwell*, this Court will not apply the more stringent *Godwin* test but instead shall apply the traditional summary judgment standards utilized in *Cornwell* and *McGinest* . . . ." *Hester v. Barnhart*, No. C 04-03511 THE, 2006 U.S. Dist. LEXIS 22500, at *7 n.3 (N.D. Cal. Apr. 17, 2006). In other words, as stated above, "[w]hen [the] evidence, direct or circumstantial, consists of more than the *McDonnell Douglas* presumption, a factual question will almost always exist with respect to any claim of a nondiscriminatory reason." *McGinest*, 360 F.3d at 1124 (internal quotation marks omitted).

In the instant case, the County has pointed to evidence supporting its position that it had a legitimate nondiscriminatory reason for its employment decision, *i.e.*, the decision not to promote Ms. Barch to Accountant III. For example, in her declaration, Ms. Drazich testifies to poor performance by Ms. Barch while on probation as an Accountant III and provides specific examples of substandard performance. Similarly, in his declaration, Ms. Drazich's supervisor, Mr. Washnak, describes specific problems with Ms. Barch's performance. Notably, Ms. Barch did not in her opposition to the motion for summary judgment submit any rebuttal evidence to these specific claims of substandard performance. Rather, she simply stated that she received positive feedback on her work from Ms. Drazich. The County also points out that, even after Ms. Barch started to complain to Ms. Drazich about Mr. Hansen in March or April 2003, Ms. Drazich still accepted Ms. Barch for promotion to Accountant II and even recommended her for promotion to Accountant III. According to the County, these facts establish that any claim of pretext by Ms. Barch is not substantiated. *Cf. Cornwell*, 439 F.3d at 1036 (plaintiff failed to produce rebuttal evidence that he was fired for non-retaliatory reasons).

Though the County has mounted a substantial showing in support of its position, and the lack of a substantive rebuttal by Ms. Barch makes this a close case for summary judgment, a reasonable jury, viewing all facts in Ms. Barch's favor and drawing all reasonable inferences in her favor, could nevertheless find by a preponderance of the evidence that Ms. Drazich's decision to deny the promotion to Accountant III was motivated, at least in part, by a retaliatory motive. Ms. Drazich recommended Ms. Barch for a promotion to Accountant III and even initially checked the boxes passing Ms. Barch on promotion as an Accountant III. It was not until after Ms. Barch complained on April 28, 2004 about not feeling safe around Mr. Hansen to which Ms. Drazich reacted angrily did she "white out" the check marks to deny Ms. Barch her promotion. Given Ms. Drazich's reaction and the timing of her reversal of recommendation on the promotion, a reasonable jury could conclude that the complaint about Mr. Hansen was a motivating factor in the ultimate decision not to promote. Although Ms. Barch had previously complained to Ms. Drazich without incurring any adverse consequences, a reasonable jury could conclude that the complaint on April 28, 2004, was the proverbial straw that broke the camel's back.

The County argues that little significance should be attributed to Ms. Drazich's "whiting out" of the promotion recommendation because Ms. Drazich only checked the boxes for promotion reflexively and unthinkingly; it was only after she filled out the performance evaluation form that she realized that a promotion was not warranted. However, a reasonable jury could refuse to credit such testimony by Ms. Drazich. Given the long list of alleged complaints about Ms. Barch's performance, as described by Ms. Drazich and other witnesses, her experience as a supervisor, and the significance of this document and decision it embodied, a reasonable jury could doubt the credibility of Ms. Drazich's claim that she inadvertently or unthinkingly checked the wrong boxes.

The Court acknowledges, as noted above, that Ms. Barch did not present any evidence directly rebutting the County's claims of substandard performance. However, a reasonable jury could doubt the credibility of these claims of substandard performance given the following:

(1) Ms. Drazich initially checked the boxes passing Ms. Barch on promotion as an Accountant III.

(2) In spite of her long list of complaints about Ms. Barch's performance, Ms. Drazich never documented any problems with Ms. Barch's work as an Accountant III. In her deposition, Ms. Drazich admitted that, in the past, she has written counseling memos if she has been dissatisfied with an employee's performance. *See* Pl.'s Ex. H (Drazich Depo. at 29) (stating that she does not as a general practice keep notes on an employee's inadequacies but admitting that she has written counseling memos)[3]; *cf. McGinest*, 360 F.3d at 1123 (stating that "the absence of any documentation confirming that a company hiring freeze was in place during the relevant time period is sufficient to raise a genuine factual dispute as to whether the asserted reason [for the adverse employment decision] was pretextual").

(2) Ms. Barch testified that Ms. Drazich never said that there was a problem with the work that Ms. Barch was doing. Ms. Barch claims that Ms. Drazich actually gave positive feedback.

---

[3] Defendants have objected to Exhibit H on the basis that the document is not authenticated and is hearsay. The objections are overruled. The authenticity of the deposition transcript is not seriously in dispute. Federal Rule of Civil Procedure 56(e) provides that an affidavit may be opposed by a deposition.

1  This is consistent with Ms. Drazich's act of initially checking the boxes for promotion to
2  Accountant III.
3  Accordingly, the Court concludes that, because a reasonable jury, viewing all the facts and
4  inferences in Ms. Barch's favor, could find the decision to deny the promotion was motivated at
5  least in part by retaliation. Whether under the burden shifting analysis or the more general
6  framework afforded under *McGinest*, Ms. Barch has created a genuine issue of fact as to the
7  motivation for denial of her promotion. Thus, summary judgment with respect to the retaliation
8  claim against the County must be **DENIED**.

### III. CONCLUSION

10  For the foregoing reasons, Defendants' motion for summary judgment is **GRANTED** in part
11  and **DENIED** in part. The motion is granted with respect to the hostile work environment claim
12  against both Defendants. The motion is also granted with respect to the retaliation claim against Ms.
13  Drazich. However, the motion is denied with respect to the retaliation claim against the County.[4]
14  This order disposes of Docket No. 39.

16  IT IS SO ORDERED.

18  Dated: January 4, 2007

19  _____
20  EDWARD M. CHEN
   United States Magistrate Judge

---

[4] Although not cited in this opinion, the Court also ruled on the admissibility of several of Ms. Barch's exhibits during the hearing on the motion for summary judgment. The Court sustained the objection to Exhibit P on hearsay grounds. The Court overruled the objection to Exhibits A and B and admitted the exhibits, but not for the purpose of proving the truth of the matters asserted therein. The Court also overruled the objection to Exhibit Q because the business/public records exception to hearsay was applicable. Finally, the Court overruled the objection to Exhibit R.